# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RYERSON, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 1:09-cv-4173 |
| v. ) | |
| ) | Hon. Elaine E. Bucklo |
| FEDERAL INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO COUNT I

NOW COMES Defendant Federal Insurance Company ("Federal"), by and through its undersigned attorneys, Eileen King Bower and Christopher H. White of TROUTMAN SANDERS LLP, and as its Answer to Count I of the Complaint of Plaintiff, Ryerson Inc., ("Ryerson"), states as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1. Ryerson brings this Complaint against Federal for monetary and statutory damages arising out of Federal's breach of its contractual obligations to indemnify Ryerson for matters alleged and losses incurred as covered under Executive Protection Policy No. 8114-31-05H, effective from January 1, 1998 to January 1, 2001 issued by Federal (the "Federal Policy"). Ryerson, formerly known as Inland Steel Industries, Inc., is an Insured under the Federal Policy.

**ANSWER:** Federal admits that Ryerson brings this Complaint against Federal. Federal further admits that it issued Executive Protection Policy No. 8114-31-05H (the "Policy") effective from January 1, 1998 to January 1, 2001, and that Inland Steel Industries, Inc. was an insured under the Policy. Federal denies the remaining allegations set forth in paragraph 1 of the Complaint.

2. In connection with certain underlying allegations made against it and Ryerson's settlement of the associated claims, Ryerson seeks, among other relief: (a) monetary damages and other relief for the harm caused by Federal's breach of its contractual obligations to indemnify Ryerson for defense and settlement costs; (b) monetary and statutory damages and other relief for Federal's vexatious and unreasonable failure to honor its obligations under the Federal Policy, as provided for under §155 of the Illinois Insurance Code, 215 ILCS 5/155; and (c) a determination that Federal breached both its defense and settlement payment obligations and that Federal is both estopped from denying coverage and, in any event, liable for coverage under the plain terms of the Federal Policy.

**ANSWER:** This paragraph consists of a description of the relief sought by Ryerson in this litigation, to which no response is required. To the extent a response is deemed necessary, Federal denies the allegations set forth in paragraph 2 of the Complaint.

## JURISDICTION AND VENUE

3. Ryerson is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois. Ryerson was formerly known as Inland Steel Industries, Inc. and Ryerson Tull, Inc.

**ANSWER:** Federal admits that Ryerson is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois. Federal lacks sufficient information to form a belief as to the truth or the falsity of the remaining allegations set forth in paragraph 3 of the Complaint and therefore denies them.

4. Federal is an insurance company corporation organized and existing under the laws of the State of Indiana with its principal place of business located in the State of New Jersey. At all relevant times, Federal has been licensed to do business in Illinois and was engaged in the business of selling and/or administering contracts of insurance in Illinois.

**ANSWER:** Federal admits that it is an insurance company organized and existing under the laws of the State of Indiana with its principal place of business the State of New Jersey and that Federal is licensed to do business in Illinois. Federal denies the remaining allegations set forth in paragraph 4 of the Complaint.

5. This Court has jurisdiction over this action pursuant to both 735 ILCS 5/2-209(a)(1) and (4) and 735 ILCS 5/2-209(b)(4) because: (a) Ryerson's causes of action arise out of Federal's transaction of business within the State; and (b) at all times relevant hereto, Federal was a corporation doing business in Illinois.

**ANSWER:** Federal denies the allegations as stated. In further response, Federal admits this Court has jurisdiction over this action.

6. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 and 102(a) because the transaction out of which this cause of action arose occurred in Cook County, Illinois. Additionally, at all times relevant hereto, Federal was authorized to do business in Illinois and was doing business in Cook County, Illinois. Thus, Federal is a resident of Cook County, Illinois.

**ANSWER:** Federal denies the allegations as stated. In further response, Federal admits that venue is proper in the U.S. District Court for the Northern District of Illinois.

## THE FEDERAL POLICY

7. In consideration of premiums paid, Federal issued the Federal Policy, a copy of which (subject to verification for completeness and accuracy as may be necessary through discovery) is attached as Exhibit A.

**ANSWER:** Federal admits that it issued the Policy. Federal denies that Exhibit A is a complete and accurate copy of the Policy and denies the remaining allegations set forth in paragraph 7 of the Complaint.

8. All premiums due under the Federal Policy have been paid, and at all times relevant to this Complaint, all pertinent terms and conditions of the Federal Policy have been satisfied.

**ANSWER:** Federal admits that the premiums due under the Federal Policy have been paid. Federal denies the remaining allegations set forth in paragraph 8 of the Complaint.

9. The effective period of the Federal Policy is January 1, 1998 to January 1, 2001. Ex. A, Premium Bill.

**ANSWER:** Federal admits the Policy was in effect from January 1, 1998 until January 1, 2001. Federal denies any remaining allegations set forth in paragraph 9 of the Complaint.

10. The Federal Policy identifies Inland Steel Industries, Inc. (now known as Ryerson) as the Parent Organization and the Insured Organization. Ex. A, Declarations, Items 1 and 5.

**ANSWER:** Federal admits only that Inland Steel Industries, Inc. is identified as both the Parent Organization and the Insured Organization on the Declarations page of the Policy. Federal lacks sufficient information to form a belief as to the truth or the falsity of the remaining allegations set forth in paragraph 10 of the Complaint and therefore denies them.

11. In general, under the Insured Organization Coverage of Insuring Clause 3, the Federal Policy requires Federal to pay on behalf of Ryerson all "loss" for which Ryerson becomes obligated to pay on account of any "claim" first made against Ryerson during the policy period or, if exercised, during the extended reporting period, for a "wrongful act" committed, attempted, or allegedly committed or attempted by Ryerson, among others, before or during the policy period. Ex. A, End. 6, ¶1 — Insured Organization Coverage, Insuring Clause 3.

**ANSWER:** Federal admits that the Policy contains a provision titled "Insuring Clause 3", and states that the Policy itself is the best evidence of the terms of the Policy. Federal denies that paragraph 11 contains a complete and accurate description of all of the terms, conditions, and exclusions of Insuring Clause 3. Federal further denies the remaining allegations set forth in paragraph 11 of the Complaint.

12. For purposes of the Insured Organization Coverage under Insuring Clause 3, the Federal Policy sets forth the following defined terms in relevant part:

- "**Loss**" means: "the total amount which [Ryerson] becomes legally obligated to pay on account of each Claim and for all Claims in each Policy Period and the Extended Reporting Period, if exercised, made against them for Wrongful Acts for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and Defense Costs." "**Loss**" does not include (i) any amount not indemnified by the Insured Organization for which the Insured Person is absolved from payment by reason of any covenant, agreement or court order, (ii) any amount incurred by the Insured Organization (including its board of directors or any committee of the board of directors) in connection with the investigation or evaluation of any Claim or potential Claim by or on behalf of the Insured Organization, (iii) fines or penalties imposed by law or the multiple portion of any multiplied damage award, or (iv) matters uninsurable under the law pursuant to which this coverage section is construed." Ex. A, Definitions, ¶18

    "LOSS" does not include any amount allocated to uncovered loss pursuant to subsection 12, ALLOCATION. "LOSS" includes punitive or exemplary damages which any INSURED becomes legally obligated to pay, provided

the punitive and exemplary damages are on account of a CLAIM which is otherwise covered under this coverage section and which is based on a SECURITIES TRANSACTION and provided such punitive and exemplary damages are insurable under the law pursuant to which this coverage section is construed." Ex. A, End. 6, ¶2(c).

The Company shall not be liable under Insuring Clause 3 for that part of LOSS, other than DEFENSE COSTS: (a) which is based upon, arises from, or is in consequence of the actual or proposed payment by any INSURED ORGANIZATION of allegedly inadequate or excessive consideration in connection with its purchase of securities issued by any INSURED ORGANIZATION; or (b) which is based upon, arises from, or in consequence of any INSURED ORGANIZATION having gained in fact any profit or advantage to which it was not legally entitled. Ex. A, End. 6,15.

- "**Defense Costs**" means: "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of [Ryerson]) incurred in defending or investigating Claims and the premium for appeal, attachment or similar bonds." Ex. A, Definitions, ¶18.

- "**Claim**" includes: "a civil proceeding commenced by the service of a complaint or similar pleading[.]" Ex. A, End. 6, ¶2(a).

- "**Wrongful Act**" means: "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by [Ryerson] based upon[,] arising from, or in consequence of any Securities Transaction." Ex. A, End. 6, ¶2 (a).

- "**Securities Transaction**" means: "(i) the purchase or sale of, or offer to purchase or sell, any securities issued by [Ryerson]; (ii) the ownership of securities of [Ryerson] by a securities holder." Ex. A, End. 6, ¶2(b).

**ANSWER:** Federal admits that the Policy contains definitions for certain terms and states that the Policy itself is the best evidence of the terms of the Policy. Federal denies that paragraph 12 contains complete and accurate quotations of the Policy. Federal further denies the remaining allegations set forth in paragraph 12 of the Complaint.

6

**THE UNDERLYING EMC SECURITIES TRANSACTION CLAIM**

13. On April 9, 1999, EMC Group, Inc. ("EMC") filed a complaint against Ryerson in the Circuit Court of Cook County, Illinois, Chancery Division, No. 99 CH 05521 (the "EMC Action"). Thereafter, EMC filed a First Amended Complaint against Ryerson in the EMC Action. A copy of the First Amended Complaint in the EMC Action is attached as Exhibit B.

**ANSWER:** Federal admits only that EMC Group, Inc. filed a complaint against "Ryerson Tull, Inc. f/k/a/ Inland Steel Industries, Inc." in the Chancery Division of the Circuit Court of Cook County, No. 99-CH-05521 (the "Underlying Litigation"), on April 9, 1999. Federal lacks sufficient information to form a belief as to the truth or the falsity of the remaining allegations set forth in paragraph 13 of the Complaint and therefore denies them.

14. The EMC Action arose out of EMC's purchase, pursuant to a November 17, 1998 stock purchase agreement, of Inland Engineered Materials Corporation ("IEMC") — a wholly owned subsidiary of Ryerson. IEMC was comprised of the holding company — IEMC, and two subsidiaries — Magnetics International Inc. ("MII") and Brockway Pressed Metals, Inc. ("BPM").

**ANSWER:** Federal admits only that the complaint in the Underlying Litigation contains allegations relating to the acquisition by EMC Group, Inc. on November 17, 1998 of Inland Engineered Materials Corporation ("IEMC"), including two subsidiaries of IEMC, Magnetics International Inc. ("MII") and Brockway Pressed Metals, Inc. Federal denies the remaining allegations set forth in paragraph 14 of the Complaint.

15. The EMC action alleged, among other things, that Ryerson did not adequately disclose material facts and documents when selling securities in a stock sale to EMC, including as to MII's relations with MII's allegedly most significant customer— all of which were

7

allegedly material to the value of MII's stock, the viability of the business, and income streams that EMC anticipated generating.

**ANSWER:** Federal admits only that the complaint in the Underlying Litigation contains allegations that the Defendant did not adequately disclose material facts and documents regarding MII, including its relations with its allegedly most significant customer and that those facts and documents were allegedly material to the value of IEMC and/or MII. Federal denies the remaining allegations set forth in paragraph 15 of the Complaint.

16. EMC asserted various claims for wrongful acts by Ryerson alleging, among other things, misleadingly inducing it into the purchase, breach of contract and breach of warranty.

**ANSWER:** Federal admits that the complaint in the Underlying Litigation asserted claims for fraud in the inducement, breach of contract, and breach of warranty. Federal denies the remaining allegations set forth in paragraph 16 of the Complaint.

17. In its First Amended Complaint, EMC sought, among other things, compensatory damages against Ryerson based on the allegedly wrongful conduct.

**ANSWER:** Federal admits only that the First Amended Complaint attached to Ryerson's Complaint in this action includes a prayer for compensatory damages and other relief. Federal denies the remaining allegations set forth in paragraph 14 of the Complaint.

### RYERSON'S NOTICE OF THE EMC ACTION TO FEDERAL AND FEDERAL'S DENIAL OF THE CLAIM

18. Shortly after being served with the complaint in the EMC Action, Ryerson provided notice to Federal and sought assistance with the defense and resolution of the litigation, as provided for under the Federal Policy.

**ANSWER:** Federal admits only that it received a copy of the complaint in the Underlying Litigation in April 1999. Federal denies the remaining allegations set forth in

8

paragraph 18 of the Complaint.

19. On June 16, 1999, Federal wrote to Ryerson and denied coverage for the EMC Action under the Federal Policy. A copy of Federal's June 16, 1999 letter is attached as Exhibit C. Federal claimed that Ryerson was not entitled to coverage under Insuring Clause 3 of the Federal Policy because the EMC Action allegedly did not "meet the definition of a Securities Transaction under the Policy." Ex. C. Federal took this position despite the fact that the EMC Action clearly arose out of a stock purchase agreement — the sale of securities by Ryerson to EMC — a Securities Transaction as defined by the Federal Policy.

**ANSWER:** Federal admits that it sent a letter to Ryerson on June 16, 1999 and states that the letter itself provides the best evidence of its contents. Federal denies the remaining allegations set forth in paragraph 19 of the Complaint.

### **RYERSON'S SETTLEMENT OF THE EMC ACTION**

20. After being wrongfully denied coverage by Federal, Ryerson was forced to defend the EMC Action on its own and, in the process, incurred significant defense costs while litigating the matter for over three years — all without any support or backing from Federal despite having paid valuable premiums for coverage.

**ANSWER:** Federal denies the allegations set forth in paragraph 20 of the Complaint.

21. In early June 2002, Ryerson and EMC entered into a Confidential Settlement Agreement And Full And Final Release Of All Claims (the "Settlement Agreement").

**ANSWER:** Federal lacks sufficient information to form a belief as to the truth or the falsity of the allegations set forth in paragraph 21 of the Complaint and therefore denies them.

22. In the Settlement Agreement, Ryerson continued to deny the allegations contained in the First Amended Complaint in the EMC Action and further generally denied any liability whatsoever.

**ANSWER:** Federal lacks sufficient information to form a belief as to the truth or the falsity of the allegations set forth in paragraph 22 of the Complaint and therefore denies them.

23. Nevertheless, to avoid further expense and costly litigation (and to avoid the risk of a potentially much greater covered liability), Ryerson agreed to make a payment of $8.5 million to EMC in exchange for a full and complete release of any and all claims and liability arising out of the stock purchase agreement which gave rise to the EMC Action, the First Amended Complaint in the EMC Action and/or all facts giving rise to the First Amended Complaint in the EMC Action. Further, in conjunction with Ryerson's settlement payment to EMC, EMC caused the First Amended Complaint in the EMC Action to be dismissed with prejudice. Ryerson also incurred significant costs defending the EMC Action, which when combined with pre judgment interest and the amount of the settlement payment, takes Ryerson's covered out of pocket loss well over $10 million.

**ANSWER:** Federal lacks sufficient information to form a belief as to the truth or the falsity of the allegations set forth in paragraph 23 of the Complaint and therefore denies them.

### COUNT I
**(Breach of Contract)**

24. Ryerson incorporates the averments of paragraphs 1 through 23 as if fully set forth herein.

**ANSWER:** Federal incorporates its responses to paragraphs 1 through 23 as if fully set forth herein.

25. The allegations of the First Amended Complaint in the EMC Action against Ryerson fall squarely within the coverage provided by the Federal Policy under Insuring Clause 3 for "Wrongful Acts" arising from or in consequence of a "Securities Transaction."

**ANSWER:** Federal denies the allegations set forth in paragraph 25 of the Complaint.

26. The defense costs incurred by Ryerson and the settlement payment made by Ryerson in connection with the EMC Action both clearly constitute "Loss" covered by the Federal Policy, well in excess of any applicable retention.

**ANSWER:** Federal denies the allegations set forth in paragraph 26 of the Complaint.

27. Any condition precedent to recovery under the Federal Policy has been satisfied, waived, or is otherwise inapplicable.

**ANSWER:** Federal denies the allegations set forth in paragraph 27 of the Complaint.

28. To date, in breach of its obligations under the Federal Policy, Federal has failed and/or refused to indemnify Ryerson for the defense costs incurred and settlement payment made in connection with the EMC Action.

**ANSWER:** Federal admits only that it has not made any payments to Ryerson under the Policy in connection with the Underlying Litigation. Federal denies the remaining allegations set forth in paragraph 28 of the Complaint.

29. As a result of its breaches of contract, Federal is liable to Ryerson for damages — for all amounts incurred by Ryerson in defense of the EMC Action and all amounts paid by Ryerson in settlement of the EMC Action.

**ANSWER:** Federal denies the allegations set forth in paragraph 29 of the Complaint.

## COUNT II
### (Violation of Illinois Insurance Code §155)

Federal has filed a motion to dismiss Count II, and therefore does not answer at this time.

Federal denies all allegations of the Complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES

The affirmative defenses set forth herein are based upon information presently known to Federal. Federal's investigation continues, and Federal reserves the right to amend its affirmative defenses in the future and to assert additional or different affirmative defenses. As its Affirmative Defenses, Federal states as follows:

## FIRST AFFIRMATIVE DEFENSE

Ryerson fails to state a claim on which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Coverage is not available under the Policy because Ryerson's claims do not fall within any of the Policy's insuring clauses.

## THIRD AFFIRMATIVE DEFENSE

Ryerson is not an Insured under the Policy and is therefore not entitled to coverage.

## FOURTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy because neither Ryerson, any of its alleged corporate predecessors (collectively, "Inland Steel") nor any insureds complied with the Reporting and Notice provisions of the Policy.

## FIFTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy because the insureds failed to comply with the Defense and Settlement provisions of the Policy.

## SIXTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy for the amount paid to settle the Underlying Litigation because Inland Steel violated the Policy's provisions by settling the Underlying Litigation without seeking or receiving written consent from Federal.

## SEVENTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy for defense costs because Inland Steel violated the Policy's provisions by incurring defense costs in the Underlying Litigation without seeking or receiving written consent from Federal.

## EIGHTH AFFIRMATIVE DEFENSE

Ryerson's claims are barred by the doctrine of laches.

## NINTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy because the insureds failed to comply with the terms and conditions of the Policy, including the "Action Against the Company" and the "Authorization Clause."

## TENTH AFFIRMATIVE DEFENSE

Pursuant to the Policy's "other insurance" clause, to the extent any claim relating to the Underlying Litigation is insured under any other valid insurance policy, the Policy provides coverage only in excess of such other insurance.

### ELEVENTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy to the extent the insureds failed to take any action necessary to preserve their rights to coverage under any other policy of insurance.

### TWELFTH AFFIRMATIVE DEFENSE

To the extent coverage is available under the Policy for any claims in the Underlying Litigation, the Policy provides that Federal is entitled to an allocation of loss, including defense costs, between those claims covered under the Policy and those claims not covered under the Policy.

### THIRTEENTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy because Inland Steel failed to provide Federal with an opportunity to effectively associate in the investigation, defense, settlement, and negotiation of the settlement in the Underlying Litigation, as required by the Policy.

### FOURTEENTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy because the Underlying Litigation did not involve any "Securities Transaction."

### FIFTEENTH AFFIRMATIVE DEFENSE

Coverage is available under the Policy only for that portion of covered loss, if any, that exceeds the applicable deductible.

### SIXTEENTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy to the extent Ryerson's claims fall within any of the Policy exclusions.

1017680v2

### SEVENTEENTH AFFIRMATIVE DEFENSE

Coverage is not available under the Policy to the extent Inland Steel failed to comply with all terms and conditions of the Policy.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Ryerson's claims are barred by the doctrine of unclean hands.

### NINETEENTH AFFIRMATIVE DEFENSE

Ryerson's claims are barred by the statute of limitations.

### TWENTIETH AFFIRMATIVE DEFENSE

Estoppel does not apply because the Policy does not include a duty to defend and Federal did not breach a duty to defend.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

The Policy does not provide coverage for fines or penalties imposed by law, the multiple portion of any multiplied damages award or matters uninsurable under the law.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The Policy does not provide coverage for a known loss.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Ryerson waived, forfeited or is estopped from pursuing any recovery under the Policy.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

The insureds failed to mitigate their damages, if any, and such conduct bars or reduces any obligation to indemnify Ryerson.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

The insureds failed to perform conditions precedent, concurrent, and subsequent under the Policy.

1017680v2

## **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Plaintiff is not entitled to recover any attorney's fees.

WHEREFORE, Federal respectfully requests that this Court enter judgment in Federal's favor and against Ryerson and that the Complaint be dismissed with prejudice, together with costs and fees.

Respectfully submitted,

FEDERAL INSURANCE COMPANY

By: /s/ Christopher H. White
*An Attorney for Federal Insurance Co.*

Eileen King Bower
Christopher H. White
TROUTMAN SANDERS, LLP
55 West Monroe Street, Suite 3000
Chicago, Illinois 60603
(312) 759-1920 (telephone)
(312) 759-1939 (facsimile)

1017680v2

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that on this 31st day of July, 2009, I caused a true and complete copy of the foregoing pleading to be served on the following counsel by electronic means through use of the Court's CM/ECF system:

Alan J. Martin
Adam K. Hollander
Brad E. Rago
Brett H. Pyrdek
BARNES & THORNBURG LLP
One North Wacker Drive
Chicago, IL 60606

**Attorneys for Ryerson**

/s/ Christopher H. White
*An Attorney for Defendant*

Eileen King Bower
Christopher H. White
TROUTMAN SANDERS, LLP
55 West Monroe Street, Suite 3000
Chicago, Illinois 60603
(312) 759-1920 (telephone)
(312) 759-1939 (facsimile)